Joel P. Hoxie (#005448)
Kelly A. Kszywienski (#025578)
Carlie Tovrea (#029709)
**SNELL & WILMER L.L.P.**
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
E-Mail: jhoxie@swlaw.com
        kszywienski@swlaw.com
        ctovrea@swlaw.com

Geoffrey E. Hobart (*pro hac vice* forthcoming)
**COVINGTON & BURLING, LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: 202.662.5281
E-Mail: ghobart@cov.com

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California; et al., | No. 2:17-cv-02286-DLR |
| Plaintiffs, | **DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT** |
| v. | |
| Insys Therapeutics, Inc., | |
| Defendant. | |

For its Answer to Plaintiffs' Complaint, Defendant Insys Therapeutics, Inc., admits, denies, and alleges as follows:

## <u>NATURE OF ACTION</u>

1.      Insys admits that it is a specialty pharmaceutical company that develops and commercializes innovative drugs and novel drug delivery systems for therapeutic molecules that improve the quality of patients' lives. Insys admits that it manufactures, markets, and sells SUBSYS®. Insys denies the remaining allegations in Paragraph 1.

2.      Responding to the allegations in Paragraph 2, Insys admits that the FDA approved SUBSYS® for the management of breakthrough pain in cancer patients 18 years

of age and older who are already receiving and who are tolerant to opioid therapy for their underlying persistent cancer pain.  Insys further admits that fentanyl is the active ingredient in SUBSYS®, and that respiratory depression is a risk of opioid agonists, including fentanyl.  Insys denies the remaining allegations in Paragraph 2.

3.      Responding to the allegations in Paragraph 3, Insys admits that the sublingual mucosal administration of SUBSYS® enables rapid absorption and may provide pain relief in as little as five minutes.  Insys denies the remaining allegations in Paragraph 3.

4.      Insys admits that health insurer reimbursement of its medications impacts Insys's revenues.  Insys denies the remaining allegations in Paragraph 4.  Insys affirmatively alleges that numerous Transmucosal Immediate Release Fentanyl ("TIRF") medications were largely prescribed "off-label" long before SUBSYS® entered the market.  Moreover, upon information and belief, Plaintiffs (hereafter, "Anthem") and other health insurers did and do cover numerous TIRF products—including SUBSYS®—that are prescribed for indications other than those approved by the FDA, despite the fact that all TIRF products are indicated only for the treatment of breakthrough cancer pain.  Insys further alleges, upon information and belief, that Anthem and other health insurers cover many products that are prescribed for off-label use.

5.      Insys denies the allegations in Paragraph 5.

6.      Responding to the allegations in Paragraph 6, Insys admits that it paid speaking fees to certain prescribers.  Insys denies that any payments "drove off-label demand."  Upon information and belief, the market for TIRF products did not grow substantially after SUBSYS® was released.  Rather, SUBSYS® primarily took market share from other TIRF products, all of which are FDA approved only for the management of breakthrough cancer pain.  In other words, to the extent that SUBSYS® was prescribed for non-approved indications, it largely would have replaced prescriptions for competing products in the same class that have the same approved indication, and thus also would have been prescribed off-label.  Insys further states that the reference to "criminal

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

indictments" in Paragraph 6 is vague and a response cannot be made because it is unclear to what criminal indictments Anthem is referring.   To the extent that a response is required to that portion of Paragraph 6, Insys responds that the unnamed "criminal indictments" speak for themselves, and that the allegations therein are given no weight as a matter of law.  *See, e.g.*, *Balabanos v. Am. Inv. Group, Ltd.*, 708 F. Supp. 1488, 1491 n.1 (N.D. Ill. 1988) ("We must comment, however, on plaintiffs' repeated references to a criminal indictment against certain of the defendants…. Plaintiffs never quite make clear why they refer to these indictments; we can only assume that they mean to undercut the defendants' case by the mere fact of the indictment. In doing so, the plaintiffs (or more properly, their counsel) ignore what is probably the most basic tenet of our system of criminal law: that a person is presumed innocent until proven guilty. This precept means that we can give no weight to the indictment alone."); *see also U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, CIVA 95-1231 RCL, 2007 WL 842079, at *5 (D.D.C. Mar. 16, 2007) ("A criminal indictment is not evidence of the charges contained in it, any more than a complaint is." (internal citations and quotation omitted)).   Insys denies the remaining allegations in Paragraph 6.

7.      Responding to the allegations in Paragraph 7, Insys admits, upon information and belief, that Anthem required prior authorization before a claim could be submitted for a SUBSYS® prescription.   To the extent Anthem alleges that all factors were required before Anthem would provide reimbursement for SUBSYS®, Insys responds that the allegation is contradicted by other allegations in the Complaint, such as Exhibit 2, which contains no reference to the respective patients' opioid tolerance.   Insys denies that Anthem subjected other TIRF products to the same preauthorization process as SUBSYS®, even though such products have the same risk profile as SUBSYS®.   Thus, Insys denies that Anthem was concerned about risk or patient safety.   Rather, on information and belief, Insys affirmatively alleges that Anthem subjected SUBSYS® to its preauthorization process only for the purpose of lowering costs and increasing profits without regard to the best interests of its patient members.   Insys is without knowledge or

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

information sufficient to form a belief about the truth of the remaining allegations in Paragraph 7 and, on that basis, denies them.

8.      Responding to the allegations in Paragraph 8, Insys admits that it developed a Patient Services Center to assist patients with the prior-authorization process.  Insys affirmatively alleges, upon information and belief, that Anthem and other insurers made its prior-authorization process intentionally difficult and time consuming (and therefore expensive) in an effort to discourage health care professionals from prescribing certain medications, including SUBSYS®.  Insys denies the remaining allegations in Paragraph 8.

9.      Insys denies the allegations in Paragraph 9.

10.     Insys denies the allegations in Paragraph 10.  Upon information and belief, Insys affirmatively alleges that by limiting access to certain medications (in an apparent effort to keep costs down and profits up), despite the determination by a medical professional that such medications were medically necessary, it was Anthem—and not Insys—that put its members' health at risk.  Moreover, to the extent that SUBSYS® was prescribed off-label, it likely replaced a prescription for a competing product in the TIRF class, with the same approved indication, and with the same risk profile.

11.     Insys denies the allegations in Paragraph 11.

**PARTIES**

12.     Upon information and belief, Insys admits the allegations in Paragraph 12.

13.     Upon information and belief, Insys admits the allegations in Paragraph 13.

14.     Upon information and belief, Insys admits the allegations in Paragraph 14.

15.     Upon information and belief, Insys admits the allegations in Paragraph 15.

16.     Upon information and belief, Insys admits the allegations in Paragraph 16.

17.     Upon information and belief, Insys admits the allegations in Paragraph 17.

18.     Upon information and belief, Insys admits the allegations in Paragraph 18.

19.     Upon information and belief, Insys admits the allegations in Paragraph 19.

20.     Upon information and belief, Insys admits the allegations in Paragraph 20.

21.     Upon information and belief, Insys admits the allegations in Paragraph 21.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

22.     Upon information and belief, Insys admits the allegations in Paragraph 22.

23.     Upon information and belief, Insys admits the allegations in Paragraph 23.

24.     Upon information and belief, Insys admits the allegations in Paragraph 24.

25.     Upon information and belief, Insys admits the allegations in Paragraph 25.

26.     Upon information and belief, Insys admits the allegations in Paragraph 26.

27.     Upon information and belief, Insys admits the allegations in Paragraph 27.

28.     Insys is without information and knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 28 regarding Plaintiffs' ownership and, on that basis, denies them.

29.     Responding to the allegations in Paragraph 29, Insys admits it is a specialty pharmaceutical company that develops and commercializes innovative drugs and novel drug delivery systems for therapeutic molecules that improve the quality of patients' lives. Insys admits that one of its products is SUBSYS®, a sublingual fentanyl spray indicated for the management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and who are tolerant to opioid therapy for their underlying persistent cancer pain.   Insys further admits that it is a Delaware corporation and that it is headquartered in Chandler, Arizona.  Insys denies any remaining allegations in Paragraph 29.

## JURISDICTION AND VENUE

30.     Responding to the allegations in Paragraph 30, Insys admits that subject matter jurisdiction is proper in this Court.

31.     Responding to the allegations in Paragraph 31, Insys admits that this Court has personal jurisdiction over Insys and that venue is proper in this Court.

## FACTUAL BACKGROUND

32.     Insys denies the allegations in Paragraph 32.

**FDA Approval Process and Subsys® Indication**

33.     Responding to the allegations in Paragraph 33, Insys states that the referenced statutes speak for themselves.   Insys does not understand the remaining

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

allegations in Paragraph 33 and, on that basis, denies them.

34.     Responding to the allegations in Paragraph 34, Insys admits that the FDA-approved use of a pharmaceutical product is referred to as the "indication."  Insys denies that pharmaceuticals may be prescribed only for their approved indication.   Upon information and belief, the remaining allegations in Paragraph 34 oversimplify and mischaracterize the steps that some pharmaceutical products go through prior to approval, and on that basis, Insys denies them.

35.     Responding to the allegations in Paragraph 35, Insys admits that the approved indications and dosages for SUBSYS® are identified in its product label, and that its label is reviewed and approved by the FDA.  Insys states that the referenced statutes speak for themselves.

36.     Responding to the allegations in Paragraph 36, Insys disputes the accuracy of the statutory reference and affirmatively alleges that 21 U.S.C. § 360aaa was amended, effective September 30, 2006, and omitted from the FDCA.  Insys admits that the allegations in Paragraph 36 accurately describe "off label" use of a pharmaceutical product.  Insys denies the remaining allegations in Paragraph 36.

37.     Responding to the allegations in Paragraph 37, Insys states that the referenced statutes speak for themselves.  Insys denies the remaining allegations in Paragraph 37.

38.     Responding to the allegations in Paragraph 38, Insys states that the referenced statutes speak for themselves.  Insys denies the remaining allegations in Paragraph 38.

39.     Responding to the allegations in Paragraph 39, Insys admits that the FDA approved SUBSYS® for the management of breakthrough pain in cancer patients 18 years of age and older who are already receiving and who are tolerant to opioid therapy for their underlying persistent cancer pain.   Insys further admits that, for outpatient use, SUBSYS® may be dispensed only to patients enrolled in the TIRF Risk Evaluation and Mitigation Strategy ("REMS") Access Program.  Insys affirmatively alleges that it is not

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

only patients who need to enroll in the TIRF REMS Access Program, but also prescribers, pharmacies, and distributors. Under the TIRF REMS Access Program, before a patient may receive a prescription, both the patient and the prescriber are required to sign a Patient-Prescriber Agreement, which, among other things, provides that the patient is informed about the TIRF product and understands the risks. Insys denies all remaining allegations in Paragraph 39.

40.     Responding to the allegations in Paragraph 40, Insys admits that physicians other than oncologists prescribe SUBSYS®, including pain specialists. Insys is without knowledge or information regarding any dentists or podiatrists who wrote SUBSYS® prescriptions during the timeframe relevant to this action (*i.e.*, beginning in 2013) and admits that primary care physicians and neurologists wrote SUBSYS® prescriptions during that timeframe. Insys denies Anthem's insinuation that the prescribing of SUBSYS®, or any TIRF product, by any health care professional other than an oncologist is per-se improper. Insys affirmatively alleges that many health care professionals other than oncologists, including pain specialists, treat patients for breakthrough cancer pain. Insys further affirmatively alleges that the FDA was aware of the types of health care professionals that prescribe TIRF products and did not restrict enrollment in the TIRF REMS to oncologists or other specific medical specialties. Additionally, the fact that a healthcare provider prescribes SUBSYS® does not mean that Insys marketed or promoted to that provider. While Insys is prohibited from promoting SUBSYS® for a non-indicated purpose, the FDA has repeatedly made clear that health care professionals are free to prescribe medication for "off-label" purposes if they believe such use is warranted and, upon information and belief, Anthem and other insurers provide coverage for many medications that are prescribed for "off-label" purposes. Insys is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 40 and, on that basis, denies them.

**Anthem's Coverage of Subsys® Prescriptions**

41.     Responding to the allegations in Paragraph 41, Insys admits that Anthem offers prescription drug benefits to its insureds.   Insys is without knowledge or information sufficient to form a belief as to the specifics of Anthem's prescription drug coverage, and therefore denies the remaining allegations in Paragraph 41.

42.     Responding to the allegations in Paragraph 42, upon information and belief, Insys admits that Anthem has contracted with Express Scripts, Inc. ("ESI") to assist Anthem in the administration of its prescription drug coverage.   Insys is without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 42 and, on that basis, denies them.

43.     Upon information and belief, Insys admits the allegations in Paragraph 43.

44.     Insys denies the allegations in Paragraph 44 to the extent that Anthem alleges that its treatment of SUBSYS® is due to its risk profile.   Insys denies that Anthem was concerned about risk or patient safety.   Rather, on information and belief, Insys alleges that Anthem subjected SUBSYS® to Anthem's preauthorization process and coverage limitations only for the purpose of lowering costs and increasing profits without regard to the best interests of its patient members.   Insys is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 44 over the course of the relevant time period and, on that basis, denies them.

45.     Responding to the allegations in Paragraph 45, upon information and belief, Insys admits that to ensure that a patient's SUBSYS® prescription is covered, the prescriber, the patient, or an agent of the patient or prescriber, may obtain prior authorization.   Insys denies that the preauthorization process relates to whether or not a pharmaceutical, including SUBSYS®, is properly prescribed.   Insys denies any remaining allegations in Paragraph 45.

46.     Responding to the allegations in Paragraph 46, Insys states that the prior authorization form attached as Exhibit 1 to the Complaint speaks for itself.   Insys is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 46 throughout the timeframe relevant to this action (*i.e.*, beginning in 2013) and, on that basis, denies them.  Additionally, Insys states that Exhibit 2 contains no reference to the respective patients' opioid tolerance.

**Insys's Scheme**

47.     Insys denies the allegations in Paragraph 47.

**i.     The Payment of Illegal Kickbacks**

48.     Insys denies the allegations in Paragraph 48.

49.     Responding to the allegations in Paragraph 49, Insys admits it paid speaker fees to certain health care professionals to promote SUBSYS®.    Insys denies the remaining allegations in Paragraph 49.

50.     Responding to the allegations in Paragraph 50, Insys admits it paid speaker fees to certain health care professionals to promote SUBSYS®.    Insys denies the remaining allegations in Paragraph 50.

51.     Responding to the allegations in Paragraph 51, Insys admits that, in certain instances, speaker programs sponsored by Insys did not comply with Insys's policies with respect to appropriate speaker program attendance and which required speakers to present the complete content of an approved educational presentation regarding SUBSYS®. Insys denies the remaining allegations in Paragraph 51.

52.     Responding to the allegations in Paragraph 52, Insys admits that one criteria considered in selecting speakers was experience with prescribing SUBSYS® and other TIRF medications.  Insys denies the remaining allegations in Paragraph 52. Insys further denies Anthem's insinuation that the prescribing of SUBSYS®, or any TIRF product, by any health care professional other than an oncologist is per-se improper.    Insys affirmatively alleges that many health care professionals other than oncologists, including pain specialists, treat patients for breakthrough cancer pain.  Moreover, all Insys speakers were registered with the TIRF REMS Access Program, and all products in the TIRF class are indicated only for the treatment of breakthrough cancer pain.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

53. Responding to the allegations in Paragraph 53, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, as Insys cannot determine how Anthem is defining the "top 10 prescribers" of SUBSYS®. On that basis, Insys denies the allegations in Paragraph 53.

54. Responding to the allegations in Paragraph 54, Insys admits that Dr. Xiulu Ruan was convicted of various charges and that Heather Alfonso pleaded guilty to one count of receiving kickbacks in relation to a Federal health care program.  Upon information and belief, Insys denies that Dr. Ruan prescribed SUBSYS® to Anthem members, as Dr. Ruan's practice was based in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.  Insys is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46, as Insys cannot determine how Anthem is defining the "top 10 prescribers" of SUBSYS®.  On that basis, Insys denies the allegations in Paragraph 54.

55. Responding to the allegations in Paragraph 55, Insys admits that it developed a Patient Services Center to assist patients with the prior-authorization process. Insys denies the remaining allegations in Paragraph 55.

56. Insys denies the allegations in Paragraph 56.

57. Insys denies the allegations in Paragraph 57.

58. Insys denies the allegations in Paragraph 58.  Insys affirmatively alleges that the indication and dosing information are available on the SUBSYS® label, and that when registering for the TIRF REMS Access Program (a prerequisite to being able to prescribe SUBSYS®), health care professionals acknowledge that they "understand that TIRF medicines are indicated only for the management of breakthrough cancer pain in patients with cancer, who are already receiving, and who are tolerant to, around-the-clock opioid therapy for the underlying persistent pain" and that they "understand that the initial starting dose for TIRF medicines for all patients is the lowest dose, unless the specific product labels provide product-specific conversion recommendations."

59. Insys denies the allegations in Paragraph 59.

60.     Insys denies the allegations in Paragraph 60.

**ii.     Insys's "Reimbursement Unit"**

61.     Insys denies the allegations in Paragraph 61.  Insys affirmatively alleges that it developed a Patient Services Center to assist patients with the prior-authorization process.  It did so because, upon information and belief, Anthem and other insurers made its prior-authorization process intentionally difficult and time consuming (and therefore expensive) in an effort to discourage health care professionals from prescribing certain medications, including SUBSYS®.

62.     Insys denies the allegations in Paragraph 62.  Upon information and belief, Anthem refuses to permit certain agents of its members to make prior authorization requests, even when those agents offer to provide Anthem with written authority from Anthem's members to do so.

63.     Insys denies the allegations in Paragraph 63.  Insys affirmatively alleges that it is not aware of any instance in which Insys representatives sought prior authorizations on behalf of Anthem members—which they did with that member's authorization—without using their real names.

64.     Responding to the allegations in Paragraph 64, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations, as Anthem has failed to identify any specific conversations to which this paragraph refers, and on that basis, denies them.

65.     Insys admits that during certain periods of time, the telephone number for the Patient Services Center was unavailable on some caller-ID systems.  Insys denies the remaining allegations in Paragraph 65.

**iii.     Insys's Misrepresentations During the Prior Authorization Process**

66.     Responding to the allegations in Paragraph 66, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations, as Anthem has failed to identify any specific prior authorization to which this paragraph refers, and on that basis, denies them.

- 11 -

67.     Responding to the allegations in Paragraph 67, Insys states that a response cannot be made because it is unclear to what criminal complaints Anthem is referring. Insys further responds that the referenced criminal complaints speak for themselves, and that the allegations therein are given no weight as a matter of law.  *See, e.g.*, *Balabanos*, 708 F. Supp. at 1491 n.1; *see also U.S. ex rel. Miller*, 2007 WL 842079, at *5.  Insys denies the remaining allegations contained in Paragraph 67.

68.     Insys admits that, in certain instances, Insys representatives used the script identified in Paragraph 68 (or a version thereof) when communicating with PBMs.

69.     Responding to the allegations in Paragraph 69, Insys states that the script speaks for itself.  Insys denies any remaining allegations in Paragraph 69.

70.     Responding to the allegations in Paragraph 70, Insys states that a response cannot be made because it is unclear to what criminal complaints Anthem is referring. Insys further responds that the referenced criminal complaints speak for themselves, and that the allegations therein are given no weight as a matter of law.  *See, e.g.*, *Balabanos*, 708 F. Supp. at 1491 n.1; *see also U.S. ex rel. Miller*, 2007 WL 842079, at *5.  Upon information and belief, Anthem knew whether or not its members had cancer, as demonstrated in Exhibit 2 to the Complaint.  Insys denies the remaining allegations contained in Paragraph 70.

71.     Responding to the allegations in Paragraph 71, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations, as Anthem has failed to identify any specific prior authorization to which this paragraph refers, and on that basis, denies them.

**Criminal Indictments, Pleas and Convictions**

72.     Responding to the allegations in Paragraph 72, Insys admits that it has been the subject of investigations by federal and state entities.  Insys denies the remaining allegations in Paragraph 72.

73.     Responding to the allegations in Paragraph 73, Insys denies that any of its current executives or managers were indicted in December 2016.  Additionally, Insys

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

states that the indictments speak for themselves, and that the allegations therein are given no weight as a matter of law. *See, e.g.*, *Balabanos*, 708 F. Supp. at 1491 n.1; *see also U.S. ex rel. Miller*, 2007 WL 842079, at *5. Insys denies the remaining allegations in Paragraph 73.

74.     Responding to the allegations in Paragraph 74, Insys states that the indictments speak for themselves, and that the allegations therein are given no weight as a matter of law. *See, e.g.*, *Balabanos*, 708 F. Supp. at 1491 n.1; *see also U.S. ex rel. Miller*, 2007 WL 842079, at *5. Insys denies the remaining allegations in Paragraph 74.

75.     Responding to the allegations in Paragraph 75, Insys denies that any of its current executives were indicted in December 2016. Additionally, Insys states that the indictments speak for themselves, and that the allegations therein are given no weight as a matter of law. *See, e.g.*, *Balabanos*, 708 F. Supp. at 1491 n.1; *see also U.S. ex rel. Miller*, 2007 WL 842079, at *5. Insys denies the remaining allegations in Paragraph 75.

76.     Responding to the allegations in Paragraph 76, Insys admits that Natalie Reed Perhacs pleaded guilty and further states that the plea agreement speaks for itself. Insys denies the remaining allegations in Paragraph 76, and denies that the allegations in Paragraph 76 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

77.     Responding to the allegations in Paragraph 77, Insys states that the plea agreement speaks for itself. Insys denies the remaining allegations in Paragraph 77, and denies that the allegations in Paragraph 77 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

78.     Responding to the allegations in Paragraph 78, Insys states that the plea agreement speaks for itself. Insys denies the remaining allegations in Paragraph 78, and denies that the allegations in Paragraph 78 are relevant to any of Anthem's claims, as the

allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

79.   Responding to the allegations in Paragraph 79, Insys states that the plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 79, and denies that the allegations in Paragraph 79 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

80.   Responding to the allegations in Paragraph 80, Insys states that the plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 80, and denies that the allegations in Paragraph 80 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

81.   Responding to the allegations in Paragraph 81, Insys states that the plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 81, and denies that the allegations in Paragraph 81 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

82.   Responding to the allegations in Paragraph 82, Insys states that the plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 82, and denies that the allegations in Paragraph 82 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

83.   Responding to the allegations in Paragraph 83, Insys states the referenced indictments speak for themselves.  Insys denies the remaining allegations in Paragraph 83, and denies that the allegations in Paragraph 83 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

84.     Responding to the allegations in Paragraph 84, Insys states that the referenced indictments speak for themselves.  Insys denies the remaining allegations in Paragraph 84, and denies that the allegations in Paragraph 84 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

85.     Responding to the allegations in Paragraph 85, Insys states that the referenced indictments speak for themselves.  Insys denies the remaining allegations in Paragraph 85, and denies that the allegations in Paragraph 85 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

86.     Responding to the allegations in Paragraph 86, Insys states that the referenced indictments speak for themselves.  Insys denies the remaining allegations in Paragraph 86, and denies that the allegations in Paragraph 86 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

87.     Responding to the allegations in Paragraph 87, Insys states that the referenced indictments speak for themselves.  Insys denies the remaining allegations in Paragraph 87, and denies that the allegations in Paragraph 87 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

88.     Responding to the allegations in Paragraph 88, Insys admits that Drs. Ruan and Couch were among the ten prescribers who wrote the largest number of SUBSYS® prescriptions in 2013.  Insys denies that the allegations in Paragraph 88 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

89.     Responding to the allegations in Paragraph 89, Insys states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

90.     Responding to the allegations in Paragraph 90, Insys states that the referenced indictments speak for themselves.  Insys lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, denies them. Insys also denies that the allegations in Paragraph 87 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

91.     Responding to the allegations in Paragraph 90, Insys states that the referenced conviction speaks for itself.  Insys lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, denies them. Insys also denies that the allegations in Paragraph 87 are relevant to any of Anthem's claims, as the allegations relate specifically to conduct that allegedly occurred in Alabama, and Blue Cross and Blue Shield of Alabama is not a plaintiff.

92.     Responding to the allegations in Paragraph 92, Insys states that the referenced plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 92.

93.     Responding to the allegations in Paragraph 93, Insys states that the referenced plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 93.

94.     Responding to the allegations in Paragraph 94, Insys states that the referenced plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 94.

95.     Responding to the allegations in Paragraph 95, Insys states that the referenced plea agreement speaks for itself.  Insys denies the remaining allegations in Paragraph 95.

**Anthem Members Did Not Have an Underlying Cancer Diagnosis**

96.     Responding to the allegations in Paragraph 96, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to Anthem's members and, on that basis, denies them.   Insys denies the remaining

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

allegations contained in Paragraph 96.  Insys affirmatively alleges that at all times relevant to its Complaint, Anthem had sufficient knowledge of its members' medical histories to know if SUBSYS® was being prescribed for an approved indication.

97.     Responding to the allegations in Paragraph 97, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.  Insys affirmatively alleges that at all times relevant to its Complaint, Anthem had sufficient knowledge of its members' medical histories to know if SUBSYS® was being prescribed for an approved indication.

98.     Responding to the allegations in Paragraph 98, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

99.     Insys denies the allegations in Paragraph 99.  Insys affirmatively alleges that at all times relevant to its Complaint, Anthem had sufficient knowledge of its members' medical histories to know if SUBSYS® was being prescribed for an approved indication.

100.    Responding to the allegations in Paragraph 100, Insys is without knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, denies them.

## COUNT I - VIOLATIONS OF STATE LAWS PROHIBITING DECEPTIVE, UNFAIR, AND UNLAWFUL BUSINESS PRACTICES

101.    Responding to the allegations in Paragraph 101, Insys incorporates its responses to Paragraphs 1 through 100 as though fully set forth herein.

102.    Insys denies the allegations in Paragraph 102.

103.    Insys denies the allegations in Paragraph 103, including the allegations in subsections (a) through (m).  Insys specifically denies that it received any reimbursement from Anthem for sales of SUBSYS®, and denies that its conduct induced Anthem to make any payments.  At all times relevant to its Complaint, Anthem had sufficient knowledge of its members' medical histories to know if SUBSYS® was being prescribed for an approved indication.

1    104.   Insys denies the allegations in Paragraph 104.

2    105.   Insys denies the allegations in Paragraph 105.

3                    <u>**COUNT II - FRAUD**</u>

4    106.   Responding to the allegations in Paragraph 106, Insys incorporates its

5    responses to Paragraphs 1 through 105 as if fully set forth herein.

6    107.   Insys denies the allegations in Paragraph 107.

7    108.   Insys denies the allegations in Paragraph 108.

8    109.   Insys denies the allegations in Paragraph 109.

9    110.   Insys denies the allegations in Paragraph 110.  Insys further denies that

10   Anthem's reliance on any misrepresentations could have been reasonable as a matter of

11   law, as Anthem admits that it had sufficient information to determine the alleged propriety

12   of 94% of its members' SUBSYS® prescriptions, *see* Compl. ¶¶ 97–98; Compl. Ex. 2.

13   Any assertion that Anthem was unaware of whether its members (1) had cancer, or (2) had

14   previously been prescribed opioids, borders on frivolous.

15   111.   Insys denies the allegations in Paragraph 111.

16   112.   Insys denies the allegations in Paragraph 112.  Insys affirmatively alleges

17   that by limiting access to certain medications (in an apparent effort to keep costs down

18   and profits up), despite the determination by a medical professional that such medications

19   were medically necessary, it was Anthem—and not Insys—that put its members' health at

20   risk.  Thus, it was Anthem that consciously disregarded the unjustifiably substantial risk

21   of significant harm to its members caused by denying the members access to appropriate

22   medication to treat significant pain.

23   113.   Insys denies the allegations in Paragraph 113.

24            <u>**COUNT III – NEGLIGENT MISREPRESENTATION**</u>

25   114.   Responding to the allegations in Paragraph 114, Insys incorporates its

26   responses to Paragraphs 1 through 113 as if fully set forth herein.

27   115.   Insys denies the allegations in Paragraph 115.  Upon information and belief,

28   Insys further denies that it made any representations, material or otherwise, to Anthem.

116.    Insys denies the allegations in Paragraph 116.  Upon information and belief, Insys further denies that it made any representations to Anthem.  Accordingly, Insys denies that it owed to Anthem any duty of care.

117.    Insys denies the allegations in Paragraph 117.

118.    Insys denies the allegations in Paragraph 118.  Upon information and belief, Insys further denies that Anthem could have relied on any representations by Insys, as Insys did not make any representations to Anthem.

119.    Insys denies the allegations in Paragraph 119.  Upon information and belief, Insys denies that it made any representations to Anthem.  Accordingly, Anthem could not rely upon any representations made by Insys.  Moreover, as Anthem had sufficient knowledge of its members' medical histories to know if SUBSYS® was being prescribed for an approved indication, Anthem could not have reasonably relied upon any representations by Insys.

120.    Insys denies the allegations in Paragraph 120.  Insys affirmatively alleges that by limiting access to certain medications (in an apparent effort to keep costs down and profits up), despite the determination by a medical professional that such medications were medically necessary, it was Anthem—and not Insys—that put its members' health at risk.  Thus, it was Anthem that consciously disregarded the unjustifiably substantial risk of significant harm to its members caused by denying them access to appropriate medication to treat significant pain.

121.    Insys denies the allegations in Paragraph 121.

## COUNT IV – UNJUST ENRICHMENT

122.    Responding to the allegations in Paragraph 122, Insys incorporates its responses to Paragraphs 1 through 121 as if fully set forth herein.

123.    Insys denies the allegations in Paragraph 123.  Insys further denies that Anthem made any payments to Insys.

124.    Insys denies the allegations in Paragraph 124.

125.    Insys denies the allegations in Paragraph 125.

126.   Insys denies the allegations in Paragraph 126.   Insys affirmatively alleges that Anthem's members who received SUBSYS® prescriptions for a non-approved indication received the full value of those prescriptions.

127.   Insys denies the allegations in Paragraph 127.

### COUNT V – CIVIL CONSPIRACY

128.   Responding to the allegations in Paragraph 128, Insys incorporates its responses to Paragraphs 1-127 as if fully set forth herein.

129.   Insys denies the allegations in Paragraph 129.

130.   Insys denies the allegations in Paragraph 130.

131.   Insys denies the allegations in Paragraph 131.

132.   Insys denies the allegations in Paragraph 132.

133.   Insys denies the allegations in Paragraph 133.

134.   Insys denies the allegations in Paragraph 134.   Insys affirmatively alleges that by limiting access to certain medications (in an apparent effort to keep costs down and profits up), despite the determination by a medical professional that such medications were medically necessary, it was Anthem—and not Insys—that put its members' health at risk.   Thus, it was Anthem that consciously disregarded the unjustifiably substantial risk of significant harm to its members caused by denying them access to appropriate medication to treat significant pain.

135.   Insys denies the allegations in Paragraph 135.

136.   Insys denies any allegations in the Complaint not expressly admitted herein.

### AFFIRMATIVE DEFENSES

1.   The Complaint fails to state a claim upon which relief may be granted.

2.   Anthem has failed to allege fraud with the particularity Fed. R. Civ. P. 9(b) requires.

3.   Anthem's claims are barred by the statute of limitations.

4.   Anthem's claims are barred by laches, waiver, estoppel, unclean hands, and unjust enrichment.

- 20 -

5.      Anthem has not adequately pled and cannot prove that Insys' alleged conduct proximately caused each Plaintiff to suffer harm.

6.      Anthem's purported damages, if any, were directly or proximately caused by Anthem's own intentional and/or negligent conduct.

7.      Anthem's purported damages, if any, may be the result of the acts or omissions of other parties, third persons, and/or non-parties at fault over whom Insys had neither control nor responsibility.  These non-parties at fault may include ESI, among others.

8.      Anthem has not adequately alleged and cannot prove its entitlement to punitive damages.

9.      Insys reserves the right to amend this Answer at a later time to assert any matter constituting an affirmative defense.

**PRAYER FOR RELIEF**

WHEREFORE, having fully answered Anthem's Complaint, Insys prays for judgment in its favor and against Anthem as follows:

A.      Denying the relief requested by Anthem;

B.      Dismissing the Complaint in its entirety and with prejudice;

C.      Awarding Insys its reasonable attorneys' fees and costs to the maximum extent permitted by law, and post-judgment interest thereon at the maximum rate allowed by law from the date of judgment until paid in full; and

D.      Awarding such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 4th day of August, 2017.

SNELL & WILMER L.L.P.


By: s/ Kelly A. Kszywienski
Joel P. Hoxie
Kelly A. Kszywienski
Carlie Tovrea
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202

Geoffrey E. Hobart
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2017, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants:

Keith Beauchamp, Esq.
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004

Jeffrey S. Gleason
Thomas C. Mahlum
Jamie R. Kurtz
Joshua B. Strom
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402


s/ Kelly A. Kszywienski
4852-5965-0124