Cameron A. Fine (Bar No. 029331)
cameron.fine@dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Suite 1000
Phoenix, Arizona  85016-4232
Tel:    480.606.5100
Fax:    480.606.5101

Brian H. Benjet *(pro hac vice)*
brian.benjet@dlapiper.com
Ilana H. Eisenstein *(pro hac vice)*
ilana.eisenstein@dlapiper.com
Matthew A. Goldberg *(pro hac vice)*
matthew.goldberg@dlapiper.com
**DLA PIPER LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300
Tel:    215.656.3300
Fax    215.656.3301

*Attorneys for Defendant
Insys Therapeutics, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Blue Cross of California, Inc. d/b/a Anthem Blue Cross of California, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Insys Therapeutics, Inc., <br><br> Defendants. | CASE NO.  2:17-cv-02286-DLR <br><br> **DEFENDANT INSYS THERAPEUTICS, INC.'S OPPOSITION TO ANTHEM'S MOTION FOR DISCOVERY SANCTIONS** |

# INTRODUCTION

Anthem's motion for sanctions is baseless, and should be denied and completely stricken from the docket. Insys produced millions of documents and provided hundreds of pages of deposition testimony from two corporate designee witnesses who were produced in response to 51 overly broad 30(b)(6) topics. Despite the wealth of information provided, Anthem cherry picks three topics on which it claims Insys's Rule 30(b)(6) witnesses—Ariyapadi Krishnaraj and Adam Brumm—were not sufficiently prepared. This is hardly a basis for imposing sanctions.

Each of the three narrow issues raised by Anthem's motion for sanctions needlessly attempts to resuscitate discovery issues that have already been resolved (including those resolved *on the morning of Anthem's filing*). Anthem's motion, moreover, grossly mischaracterizes the testimony of Insys's witnesses, ignores substantial and substantive testimony provided on each topic to date, and omits any mention of Insys's specific good faith offers, made during a transcribed meet and confer session, which would have fully resolved each item complained of by Anthem. The record shows that Insys has fully and appropriately discharged its discovery obligations under Rule 30(b)(6).

It should also not be overlooked that the discovery produced to Anthem, to date, is already far more than what the Federal Rules would have required (and indeed, is wholly *disproportionate* to and in excess of the needs of this case). Insys has produced over **4.2 million** documents to Anthem—more documents than *any* other party or governmental agency received or demanded in other matters involving allegations that are far broader than those asserted by Anthem in the instant case. Despite Anthem's representations that it would bear the burdens associated with such a large document production, Insys has accommodated Anthem's demands to search for, review, identify, and index documents already in Anthem's possession. When disputes have arisen with respect to documentary evidence or testimony, Insys has consistently offered testimony from additional deponents, agreed to produce additional information, and/or clarified prior discovery responses.

To the extent Anthem's sanctions motion is premised on a purported lack of

preparation by Insys's Rule 30(b)(6) witnesses, that claim is plainly without merit. First, Mr. Krishnaraj's testimony demonstrates that his preparation was detailed and diligent. In advance of his deposition, Mr. Krishnaraj spent three days meeting and reviewing documents with outside counsel, and substantial additional time reviewing documents on his own and speaking to individuals at Insys with relevant information. (*See* Ex. A, Krishnaraj Dep. Tr. at 320:4-25; 130:18-136:25.[1]) Anthem has not disputed that Mr. Krishnaraj was fully prepared on 33 out of 35 topics designated and testified on other matters spanning a 325 page transcript. He sat for a full deposition day lasting from 9:05 AM to 5:14 PM. Second, Anthem ignores that Mr. Krishnaraj was produced subject to Insys's objections to the overly broad, unduly burdensome, and otherwise improper topics contained in Anthem's Rule 30(b)(6) notice.

As to Mr. Brumm, Anthem complains about his testimony, while again ignoring the valid and good faith objections made by Insys to the areas of inquiry. Even more troubling is that Anthem attempts to seek sanctions related to Mr. Brumm's testimony when Anthem knew long ago that he was being re-produced for deposition on the day *after* its sanctions motion was filed.

When Anthem's vitriol, invective, and hyperbole is cast aside, its motion musters only three complaints, none of which are meritorious or constitute a valid basis for imposing sanctions:

1. *Use of the exclamation points.* Anthem's motion grossly misrepresents Mr. Krishnaraj's testimony and preparation on this topic, and is premised on Anthem's demonstrably false assertion that Mr. Krishnaraj did not speak to the Patient Services Center ("PSC") and compliance personnel with knowledge of this issue. To the contrary, Mr. Krishnaraj testified that he received the information available on this subject from each current employee with knowledge of the issue, including the three employees remaining in

---

[1] For the Court's convenience, Insys has filed the full transcripts of the deposition of Ariyapadi Krishnaraj (Exhibit A) and the deposition and re-deposition of Adam Brumm (Exhibits O and P). Otherwise, Insys has filed excerpts of other deposition transcripts that it cites herein.

2

Insys's PSC, Insys's prior General Counsel, and employees from Insys's compliance department. (*See id.* at 130:18-136:25; 305:12-18.) Mr. Krishnaraj explained that none of the individuals he interviewed or gathered information from were aware of any Insys policy to avoid the word "cancer," much less aware of any instruction from Insys management or the compliance department that an exclamation point should be used instead of any particular word. Mr. Krishnaraj further testified that some individuals may have used exclamation points to avoid placing diagnosis information in emails to protect private health information of patients. (*Id.* at 130:18-136:25; 305:3-307:22; 313:4-9.) Anthem's contentions on this issue are misleading, baseless, and represent nothing more than dissatisfaction with the substance of Mr. Krishnaraj's testimony—not any failure of preparation on Mr. Krishnaraj's part as a corporate designee.

2. *Former Insys Employees (Deposition Topics 17 and 29)*. A Rule 30(b)(6) deposition is not a memory test. *See Madrigal v. Allstate Indemn. Co.*, No. 14-4242, 2015 WL 12746225, at *5 (C.D. Cal. Apr. 22, 2015) (cautioning that a corporate designee witness should not be subjected to a memory contest). Yet, Anthem demands that Insys produce a witness to testify about the circumstances surrounding the termination or resignation of 16 former Insys employees, including "any investigations" into their job performance. This demand is wholly disproportionate to the needs of this case whether framed in terms of relevance or undue burden. This is especially so, considering that Insys produced the entirety of the personnel files for these individuals more than six months ago.

Anthem now cannot seek sanctions for Mr. Krishnaraj's failure to memorize these documents, particularly considering that Anthem's counsel admitted that they themselves did not search for or review these documents in preparation for Mr. Krishnaraj's deposition and did not show Mr. Krishnaraj a single one of the relevant documents. And despite the clearly cumulative nature and marginal relevance of the information sought from Mr. Krishnaraj, Insys has since offered the testimony of another witness, who served in Insys's human resources department, to address these topics. Unfortunately, Anthem's motion ignores this good faith offer. The designation of a new witness is entirely appropriate, and

resolves this issue. *See E.E.O.C. v. Boeing Co.,* No. 05-3034, 2007 WL 1146446, at *1 (D. Ariz. Apr. 18, 2007).[2]

   3. *Preparation of Corporate Designee on Document Collection and Production Issues.* Anthem's protests about the preparation of Adam Brumm are entirely unfounded. Insys disputes any assertion that Mr. Brumm was unprepared for his first deposition. At any rate, Anthem re-deposed Mr. Brumm the day after filing its sanctions motion and his testimony makes clear he was prepared on the designated topics. Mr. Brumm provided detailed explanations on the scope of over 40 separate productions made to 33 different entities, walked through a chart of every search term, identified custodians, and other document categories collected, and explained the methods and processes of the preservation, collection, and production of documents in this case.

  Anthem has not demonstrated that any sanctions against Insys are warranted and, even if they were, the specific sanctions sought are wildly out of line with the supposed harm sustained. Thus, the motion should be denied.

  The Court should also invoke its inherent authority and, in light of Anthem's numerous inaccurate assertions, and outlandish and baseless discovery-related claims against Insys, strike the motion from the docket in its entirety.

## ARGUMENT

  Insys has been forthcoming in the discovery process and has repeatedly attempted to provide Anthem with substantive responses to its inquiries as a means of advancing this case, including through diligent preparation of Rule 30(b)(6) witnesses. Unfortunately, Anthem's response to Insys's collaborative approach has been to reject reasonable offers to provide the information requested and instead file accusatory and unnecessary discovery motions seeking to gain a procedural advantage at the expense of efficient case management. Anthem's gamesmanship extends even to flatly misstating the testimony of the Insys witnesses at issue, including reliance on demonstrably false representations of the

---

[2] Given that Anthem apparently did not prepare for this topic, there can be no claim of harm stemming from this additional deposition.

4

1  record and testimony. This Court should not condone this counterproductive behavior.

2  Despite a clear record of Insys's extensive discovery efforts, Anthem demands
3  sanctions based upon three narrow complaints: (1) Mr. Krishnaraj's preparation to testify
4  on certain Insys employees' use of an exclamation point in lieu of the word "cancer"; (2)
5  Mr. Krishnaraj's preparation to speak on "[a]ll performance reviews or evaluations of any
6  individual involved in seeking prior authorization for a Subsys prescription for any Anthem
7  member identified in" a certain document and "[t]he circumstances surrounding the
8  termination or resignation" and "any investigations into the performance" of 16 individuals;
9  and (3) Mr. Brumm's first deposition regarding Insys's collection and production of
10 documents in this case (and ignoring the fact that Insys reopened the deposition at Anthem's
11 request). As described in detail below, Insys met its discovery obligations with respect to
12 each subject. Anthem's motion for sanctions is completely devoid of merit and should be
13 dismissed out of hand. Given that the motion is also legally insufficient and riddled with
14 mischaracterizations, the Court should strike Anthem's motion from the case docket.

15       **I.    Use of The Exclamation Points.**

16 Ariyapadi Krishnaraj was prepared to testify on the deposition topic covering the use
17 of exclamation points in certain emails. Anthem's efforts to manipulate this topic are
18 transparent, and its arguments fall flat for three reasons. First, Anthem's apparent
19 dissatisfaction with the substance of Mr. Krishnaraj's testimony is not a basis for imposing
20 sanctions. Second, Mr. Krishnaraj was well prepared to convey Insys's available knowledge
21 on the exclamation point issue. Third, Mr. Krishnaraj's testimony adequately answered
22 Anthem's questions about the exclamation point issue.

23 First, Anthem's shifting arguments on the exclamation point issue expose its lack of
24 merit. Initially, Anthem asserted that an exclamation point is an unsearchable character and,
25 therefore, it was used to shield documents from production. But when proven wrong,
26 Anthem shifted its focus and began complaining that Insys failed to provide adequate
27 written and Rule 30(b)(6) testimony on this issue. Specifically, Anthem first raised the issue
28 of the exclamation point in email correspondence to Insys dated April 27, 2018, and again

on May 18, 2018, when Anthem wrongly told this Court that an exclamation point is an unsearchable character and, therefore, Insys's use of exclamation points limited the number of responsive documents Anthem received. (*See* Ex. B, April 27, 2018 Email from J. Kurtz; Ex. C, May 18, 2018 Tr. of Telephonic Discovery Hearing at 15:11-17:9.) In response to those concerns, Insys identified all documents produced in discovery containing this character, which demonstrated: (1) an exclamation point is a searchable character; and (2) no documents were destroyed, failed to be collected, or were not produced due to any employee's use of that symbol. (*See* Ex. D, List of Bates Ranges for Documents with !, ( ! ), or (!) from Insys Production as of August 9, 2018; Ex. E, List of Bates Numbers for Documents Produced with an Exclamation Point (!).) After recognizing that its initial position had no merit, Anthem pivoted to challenging Insys's Rule 30(b)(6) testimony on this issue.

As to this second point, Mr. Krishnaraj took every reasonable step to prepare for Anthem's questions about the existence of, or a company policy on, the exclamation point issue. Anthem's motion, however, entirely disregards Mr. Krishnaraj's testimony. Instead, Anthem falsely claims that Mr. Krishnaraj "did not speak to a single employee—current or former—who worked in the IRC [PSC] in the relevant timeframe." (*See* Pl.'s Mot for Sanctions, Doc. No. 124 at 4.) That allegation is flatly contradicted by the record and blatantly ignores the key sections of Mr. Krishnaraj's testimony. Contrary to Anthem's motion, Mr. Krishnaraj spoke to or gathered information from every current employee who might have knowledge of the subject, including Yoshiko ("Yoshi") Jamison (Compliance Manager), Franc Del Fosse (prior General Counsel), Robert Schwimmer (Deputy General Counsel), and the three remaining PSC employees, including Stephanie Pierce. (*See* Ex. A, Krishnaraj Dep. Tr. at 309:1-10; 305:12-307:22; 130:18-136:25.) Mr. Krishnaraj specifically testified:

[redacted]

[lines 1-6 redacted]

(*Id.* at 135-136.) Anthem's motion totally ignores Mr. Krishnaraj's testimony. Anthem's gross misrepresentation of the record as a means to secure sanctions is unconscionable. And Anthem's misleading and selective citation to the deposition transcript is not mere oversight: Insys's counsel explained during the November 7 meet and confer that Mr. Krishnaraj testified that he spoke with or gathered information from the three PSC employees, Mr. Schwimmer, and Mr. Del Fosse. Anthem's counsel replied, "I don't believe anyone testified to that. So there's some records stuff we need to kind of clean up. There may be ways of dealing with it. But we'll take that under advisement." (*See* Ex. F, Nov. 7, 2018 Meet and Confer Tr. at 26-29.) In light of that meet and confer exchange, Anthem's misrepresentation of Mr. Krishnraj's testimony is inexcusable.[3] Anthem's motion for sanctions should be denied out of hand for that reason alone.[4] Other than this entirely spurious allegation, Anthem points to no deficiency in Mr. Krishnaraj's preparation.

---

[3] Insys reserves the right to assert its entitlement to sanctions, including the fees and costs it incurred in litigating this motion, which is premised on what appear to be deliberate distortions of the factual record.

[4] If that were not enough, the meet and confer held the day this motion was filed revealed that Anthem's complaint is *not* about the adequacy of preparation or discovery at all. Rather, Anthem wants to use the 30(b)(6) process to box in Insys's trial strategy on this issue. (*Id.* at 26:11-15 (Mr. Gleason: "So what we need to know is: Is the company going to show up at trial with a different explanation or additional evidence or additional support other than what is on the record right now?").) That is not required by the Federal Rules. Insys has provided complete and adequate answers on this question, and has met (and exceeded) its discovery obligations.

Third, Mr. Krishnaraj's preparation and answers to Anthem's questions were entirely adequate. Anthem's real dissatisfaction with Mr. Krishnaraj's testimony is that his answers do not support Anthem's theory that Insys's Compliance Department instructed employees to substitute an exclamation point for the word "cancer" in emails and other company documents. (*See* Pl.'s Mot. for Sanctions, Doc. No. 124 at 2-3.) Anthem's motion for sanctions is largely premised on its disappointment that Mr. Krishnaraj did not explain *why* Insys would have such a policy. But Insys strongly disputes Anthem's unproven premise that the Insys Compliance Department had any such policy or issued such an instruction in the first instance.

Anthem is incorrect that the record demonstrates that any such policy was promulgated by Insys's compliance department. Indeed, the only evidence of instructions regarding the use of the word "cancer" stems from deposition testimony by a single former PSC employee (David Richardson) and a single email by a call-center representative that employees are "not supposed to put cancer . . . in an email form per compliance." (*See* Ex. G, Richardson Dep. Tr. at 222:19-223:9.) That evidence, however, has been contradicted by other testimony in the record, including other testimony by Mr. Richardson himself (which, Anthem entirely ignores).

Specifically, Anthem relies heavily on testimony from Mr. Richardson to assert that Insys had instructed employees to substitute an exclamation point for the word "cancer." At one point in Mr. Richardson's deposition he testified that "compliance" instructed the PSC employees to use an exclamation point in emails to designate cancer or cancer patients. (*See id.* at 205:25-206:11) Richardson recalled that this instruction was given by "Liz [Gurrieri] and Yoshi [Jamison]," who served as compliance manager at Insys. (*Id.*) But later, Mr. Richardson contradicted that testimony and stated that the purported instruction to use the exclamation point was relayed to him by his supervisor, most likely Elizabeth Gurrieri, and not [Deputy Compliance Officer] Yoshi Jamison or other compliance department personnel. (*Id.* at 217:21-218:5.) Further, Mr. Richardson could not explain why that purported instruction was given or even recall "how long it lasted." (*Id.*)

Ms. Jamison was deposed on June 28, 2018, and categorically denied that Insys's compliance department had a policy not to use the word "cancer". (*See* Ex. H, Jamison Dep. Tr. at 205:15-210:25.) Ms. Jamison explained that the compliance department did have policies to avoid the use of patient diagnosis information in written or email correspondence to protect an individual private health data. (*Id.* at 203:3-207:1.) Nevertheless, she also testified that she never had any discussions about using an exclamation point in place of the word "cancer" and was unaware of that practice. (*Id.* at 207:2-209:8.) A former Insys IRC (PSC) employee, Angel Alarcon, was also deposed and asked about whether she was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and she answered, ▮▮▮ (*See* Ex. I, Alarcon Dep. Tr. at 164:18-24.) Danielle Davis, who became Insys's Director of Compliance in 2014, has similarly denied the existence of any such policy or instruction directing employees to avoid the term cancer or to specifically use an exclamation point in lieu of the word "cancer."[5] (*See* Ex. J, Decl. of Ariyapadi Krishnaraj (Nov. 21, 2018).) The testimonial record refutes the premise of Anthem's call for sanctions and reflects that Insys's Compliance Department did not have a policy or issue instructions about the use of exclamation points in lieu of the word cancer.

Accordingly, Mr. Krishnaraj's testimony was entirely consistent with the testimonial record. Mr. Krishnaraj explained that the additional individuals he interviewed or gathered information from prior to the deposition agreed with Ms. Jamison, *i.e.*, they were unaware of a specific policy about the use of an exclamation point, but opined that certain employees may have used that character to avoid placing at risk patient health information, including diagnoses, through email correspondence. (*See* Ex. A, Krishnaraj Dep. Tr. at 135:25-136:18; 309:1-10.)

---

[5] The other individual cited by Mr. Richardson, Elizabeth Gurrieri, was not a compliance employee, is no longer with the company, and has been convicted of fraud arising out of her role at Insys. Whatever Ms. Gurrieri's instructions and motives might have been are not available to Insys in light of Ms. Gurrieri's pending criminal case.

Anthem also incorrectly faults Insys for offering the opinion of the prior General Counsel, Franc Del Fosse, that the exclamation point may have been substituted for diagnosis information to protect patient health information.[6] But it is well-established that a 30(b)(6) witness is not just permitted, but required to testify not only "about facts within the corporation's knowledge, but also its subjective beliefs and opinions" and must "provide its interpretation of documents and events." *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); *Ierardi v. Lorillard, Inc.*, Civ. A. No. 90-7049, 1991 WL 158911 (E.D. Pa. Aug. 13, 1991). In any event, Mr. Krishnaraj testified that this same information was provided by both Stephanie Pierce (a PSC employee) and Yoshi Jamison (Deputy Director of Compliance), both of whom stated that individuals were told not to put diagnoses in emails to protect patient health information. (*See* Ex. A, Krishnaraj Dep. Tr. at 130:18-136:25; 309:1-10.) Nor was Mr. Krishnaraj obligated to cross examine the General Counsel of Insys on whether his opinion "hold[s] water" in light of other documentary evidence, as Anthem suggests. (*See* Pl.'s Mot. for Sanctions, Doc. No. 124 at 4-6.) That is not the role of a corporate designee. And just because Anthem did not receive the answers it hoped for does not mean that Insys's corporate designee was ill prepared to testify. The motion for sanctions is entirely groundless, should be categorically denied, and the "exclamation point" issue should finally be put to rest.

## II.   Former Insys Employees (Deposition Topics 17 and 29)

Insys properly objected in writing to these deposition topics (*see* Ex. K, April 19, 2018 Ltr. from Joel P. Hoxie at 7, 9), which seek testimony on the circumstances surrounding the termination or resignation of 16 former Insys employees, including "any investigations" into their job performance. At the outset, Anthem has never offered a rational explanation as to why this testimony is relevant to its claims in the first place. Even if Anthem could articulate some marginal relevance, it is vastly outweighed by the

---

[6] Mr. Del Fosse was contacted in preparation for the Rule 30(b)(6) deposition after Anthem's counsel, in a prior meet and confer session, insisted that he had relevant information on this issue.

unreasonable demand that a corporate designee be required to memorize details about why each of these 16 employees is no longer with the company. *See Madrigal v. Allstate Indemn. Co.*, No. 14-4242, 2015 WL 12746225, at *5 (C.D. Cal. Apr. 22, 2015) (cautioning that a corporate designee witness should not be subjected to a memory contest); *Whiting v. Hogan*, No. 12-8039, 2013 WL 1047012, at *11 (D. Ariz. Mar. 14, 2013) (striking phrases such as "any and all" from 30(b)(6) deposition notice because "[d]efendants cannot reasonably designate and prepare a corporate representative to testify on their behalf regarding these broad lines of inquiry.").

The testimony sought by this topic is also cumulative. In April 2018, Insys produced the personnel files for every former employee identified in Anthem's deposition notice. Based on this fact alone, sanctions are inappropriate. But there is more. As the meet and confer transcript from November 7, 2018 shows, it does not appear that Anthem ever consulted those files,[7] much less evaluated whether the records would satisfy the questions about the separation of these individuals from Insys. (*See* Ex. F, Nov. 7, 2018 Meet and Confer Tr. at 33:3-10 (Mr. Gleason: "My question is . . . are those documents in our possession?"); *id.* at 33:16-19 (Ms. Kurtz: "We haven't been able to find those in the production. So if that's your position, we're going to need Bates numbers for those files.").) This is not surprising, as no such documents were shown to Mr. Krishnaraj at his deposition. Instead, Anthem wasted time engaging in theatrics, as opposed to asking relevant questions pertaining to its claims in this case.

Finally, much of the testimony sought by Anthem through this topic is improper because many of the details regarding investigations of these individuals are shielded from disclosure by the attorney-client privilege and/or work product doctrine. Anthem should know this because documents related to any such investigations are disclosed on Insys's privilege logs.

Nevertheless, and consistent with its efforts to move discovery forward, Insys

---

[7] Anthem's counsel acknowledged during the November 7 meet and confer that the human resources information that the dispute on this issue "may be on both of us." (*See* Ex. F, Nov. 7, 2018 Meet and Confer Tr. at 37: 11-12 (emphasis added).)

11

offered at the November 7 meet and confer to provide Anthem with the Bates ranges for these documents, and did so on November 12. (*See* Ex. L, Nov. 12, 2018 Ltr. from E. Karabell to J. Kurtz; Ex. M, List of Bates Numbers for Documents Produced from Human Resources Files.) In addition, Insys has produced and Anthem has in its possession non-privileged correspondence regarding compliance investigations that were part of the personnel files produced. And where such materials are privileged, that assertion of privilege is appropriately logged.

If that were not enough, Insys has also offered to designate Daniel Pon, Insys's former Director of Human Resources, on these topics and provided Mr. Pon's availability on specific dates. (*Id.* at 30:22-31:15.) Designation of an additional witness is entirely reasonable and proper. *E.E.O.C. v. Boeing Co.*, No. CV 05-03034-PHX-FJM, 2007 WL 1146446, at *1 (D. Ariz. Apr. 18, 2007); *Alexander v. FBI*, 186 F.R.D. 137, 141 (D.D.C.1998). And the fact that Anthem complains about a single, overly broad, unduly burdensome, and improper deposition topic out of the **37** assigned to Mr. Krishnaraj, is certainly no basis for sanctions.[8] Once again, the record demonstrates that Insys proactively sought to address the alleged deficiencies raised by Anthem, whether meritorious or not. Anthem's motion should be denied.

**III.    Corporate Designee Testimony on Document Collection and Production**

The baseless nature of Anthem's sanctions motion is further illustrated by the fact that it was filed the day before the mutually agreed reopening of Mr. Brumm's deposition on document collection and production issues. Mr. Brumm was prepared for his first deposition, which yielded over 80 pages of testimony. (*See generally*, Ex. O, Brumm First. Dep. Tr.) And even though Insys does not agree with Anthem's claims that Mr. Brumm was

---

[8] Indeed, Anthem can hardly complain about an additional 30(b)(6) deponent, given its own conduct with regard to 30(b)(6) depositions. Anthem has designated four separate 30(b)(6) witnesses in multiple cities, it substantially modified the scope of its own 30(b)(6) witness, Jeff White, less than 48 hours prior to the deposition, and then it further narrowed the scope at the White deposition itself, curtailing that deposition to approximately two hours. (*See, e.g.*, Ex. N, Oct. 17, 2018 Email from J. Kurtz to I. Eisenstein, *et al.*)

unprepared when initially deposed, his second deposition, which took place on November 8, 2018, resolves any rational concern that Insys failed to meet the requirements of Rule 30(b)(6). On that day, and in a case where Anthem has identified no credible spoliation issues related to Insys's document productions, Mr. Brumm sat for a detailed deposition that yielded nearly 200 pages of testimony. Mr. Brumm's testimony painstakingly delineated the scope of ***over 40 productions, to over 33 entities***, and the use of search terms and the subject matter of the documents collected and produced as to each. (*See generally*, Ex. P, Brumm Second Dep. Tr.)

Moreover, in advance of Mr. Brumm's second deposition, Insys offered to provide Anthem with a chart (in lieu of a deposition) describing each government request, the documents produced, the custodians identified, search terms utilized, and other information on the scope of the productions. (*See* Ex. Q, October 17, 2018 Ltr. from I. Eisenstein to J. Kurtz.) Anthem rejected this offer and instead subjected Mr. Brumm to a memory test on the very items that could have been provided in a definitive manner weeks prior to the deposition. Nevertheless, during the November 8, 2018 deposition, Mr. Brumm provided detailed testimony on the collection and production of the documents by referencing the chart previously offered, and which was made available to Anthem on that day. (*See*, Ex. R, Chart of Detail of Government Productions (marked as Exhibit 175 to the November 8, 2018 (second) deposition of Adam Brumm).) Mr. Brumm further confirmed that Anthem has received everything that has been provided in response to government requests in addition to the PSC files produced specifically at Anthem's request that provide detailed information as to Anthem members that received Subsys. Anthem's demand for sanctions on this issue is entirely misplaced in light of its agreement to proceed with the reopening of the Brumm deposition and his conscientious explanation of the preservation, collection, and production of documents in this case.

### IV. Anthem's Meritless Motion for Sanctions Should Be Denied and Stricken From The Docket.

Given the numerous defects and mischaracterizations in Anthem's motion for

sanctions, Insys respectfully requests that this Court not just deny, but use its inherent authority to strike the motion from the docket. First, Anthem's motion should be denied because it makes absolutely no showing that could warrant the dramatic relief that Anthem requests. Second, Insys requests that this Court provide redress for the numerous inaccuracies and outlandish claims in Anthem's motion by wholly striking it from the case docket.

Anthem has not shown that Insys's Rule 30(b)(6) witnesses were inadequately prepared to testify on their designated topics, or that Insys engaged in any conduct warranting the imposition of case-dispositive sanctions. *See Barten v. State Farm. Mut. Auto. Ins. Co.*, No. CIV 12-399-TUC-CKJ (LAB), 2014 WL 12639943, at *2-3 (D. Ariz. July 11, 2014). There has been no damage to the integrity of this case and Anthem cannot make even a colorable claim that it has been prevented from proceeding on the facts. Insys has been working diligently to get Anthem everything it could need. Insys has met and will continue to meet its discovery obligations in good faith. At every turn, Insys has gone out of its way to advance discovery and provide information to Anthem whether in the form of identifying documents that had been produced that Anthem could not find, running searches on the disputed exclamation point issue, or offering additional testimony and witnesses in response to Anthem's complaints.

Anthem's demands for evidentiary sanctions are utterly baseless and seek instructions that are directly contradicted by the testimony and record. For example, Anthem asks this Court to find "conclusively that Insys's Compliance Department did indeed direct employees to alter documents in order to hide information from the government and Anthem alike"—a demand completely untethered to even the specific exclamation point issue. [9] As to that narrow question, Mr. Krishnaraj, Ms. Jamison, and Ms. Alarcon have provided sworn testimony there was no directive by the Compliance Department to avoid the word "cancer," much less for employees to use an exclamation

---

[9] Anthem offers no support (nor could it) for its scurrilous allegation that Insys "hid" information from the government. Such unsubstantiated and false allegations are inappropriate and have no place in a submission to this Court.

14

point instead. As Mr. Krishnaraj described in his affidavit, he additionally has confirmed the same with Ms. Davis. Mr. Krishnaraj's testimony satisfies Insys's obligation under Rule 30(b)(6), and Anthem provides no basis for its groundless claims for any sanctions, much less for this Court to require counterfactual instructions.

Likewise, Anthem provides absolutely no grounds to seek a finding that the individuals listed in Topic 29 of Anthem's 30(b)(6) notice, were "terminated by the company for criminal wrongdoing." (*See* Pl.'s Mot. for Sanctions, Doc. No. 124 at 12.) Anthem has had the full personnel files of each individual since April 2018, which do not show that all 16 individuals were terminated for "criminal wrongdoing." Anthem, moreover, acknowledged that as of the day of it filed its motion for sanctions, it had not even bothered to review those records. Anthem further has been offered the opportunity to explore any other non-privileged information on the subject with a designated Rule 30(b)(6) witness on this subject. Again, it asks this Court to make evidentiary findings that are groundless and contrary to the record and the produced evidence. Anthem's demand for sanctions should be summarily denied.

The Court should also use its inherent power to strike Anthem's motion for sanctions. Anthem's motion is off-base, and seems aimed only at harming Insys rather than attempting to resolve any real dispute. "It is well established that district courts have inherent power to control their docket." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (internal quotation marks and alterations omitted); *see also Calkins v. Shapiro & Anderson, L.L.P.*, No. 05-0815-PHX-ROS, 2005 WL 3434718, at *3 (D. Ariz. Dec. 13, 2005) (discussing district court's "inherent power over the administration of its business") (internal quotation marks omitted). As described above, Anthem's motion is full of inaccuracies, and certainly fails to include relevant information from the meet and confer that occurred on the very day Anthem filed its motion. Even more, the motion addresses issues that should be considered resolved; there is simply no active issue, let alone one which warrants sanctions. Rather than adding anything at all to the discovery process, Anthem's motion is totally counterproductive to any forward progress in this case. The

Court should invoke its inherent powers here and strike the motion in its entirety. This would encourage efficiency by putting this manufactured sideshow to rest and allowing the parties to continue the progress they have been making since the meet and confer, as well as the forward progress Insys has been working towards all along.

## CONCLUSION

For the foregoing reasons, Anthem's Motion for Discovery Sanctions should be denied in its entirety and stricken from the case docket.

Dated this 26th day of November, 2018.

**DLA PIPER LLP (US)**


By: s/ Cameron A. Fine
Cameron A. Fine
cameron.fine@dlapiper.com
2525 East Camelback Road, Suite 1000
Phoenix, Arizona  85016-4232
Tel:      480.606.5100
Fax:      480.606.5101

Brian H. Benjet *(pro hac vice)*
brian.benjet@dlapiper.com
Ilana H. Eisenstein *(pro hac vice)*
ilana.eisenstein@dlapiper.com
Matthew A. Goldberg *(pro hac vice)*
matthew.goldberg@dlapiper.com
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300
Tel:      215.656.3300
Fax:      215.656.3301

*Attorneys for Defendant
Insys Therapeutics, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2018, a redacted copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and an unredacted copy was uploaded to the Court's website as a sealed lodged proposed document. Notice will be sent to all CM/ECF registrants in this action via the CM/ECF system. An unredacted copy of the foregoing was also sent via electronic mail to:

Keith Beauchamp, Esq.
kbeauchamp@cblawyers.com
COPPERSMITH BROCKELMAN PLC
2800 North Central Avenue, Suite 1900
Phoenix, AZ 85004

Jeffrey S. Gleason
jgleason@robinskaplan.com
Thomas C. Mahlum
tmahlum@robinskaplan.com
Jamie R. Kurtz
jkurtz@robinskaplan.com
Joshua B. Strom
jstrom@robinskaplan.com
ROBINS KAPLAN LLP
800 LeSalle Avenue, Suite 2800
Minneapolis, MN 55402

*Attorneys for Plaintiffs*

*s/* Pat Kelly