**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Blue Cross of California Incorporated, et al., | No. CV-17-02286-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. |  |
| Insys Therapeutics Incorporated, |  |
| Defendant. |  |

Before the Court is Defendant Insys Therapeutics Incorporated's ("Insys") motion to dismiss (Doc. 97), which is fully briefed.[1] For the reasons stated below, Insys' motion is granted in part and denied in part.

## I. Background[2]

Anthem insures and administers employer-sponsored group health insurance benefits plans.[3] (Doc. 84 ¶ 53.) Anthem offers fully insured and self-funded plans. For the fully insured plans, Anthem directly insures the plan, resolves benefit claims, and makes benefit payments from its own assets. (¶ 54.) In contrast, self-funded plans are

---

[1] Insys requested oral argument, but after reviewing the parties' briefing and the record, the Court finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] This section draws from the allegations in the complaint, which are accepted as true for purposes of this Order.

[3] The named plaintiffs in this action all are owned by Anthem, Incorporated, and are collectively referred to herein as "Anthem." (Doc. 84 ¶ 28.)

funded by the employer sponsor, while Anthem operates as the claims administrator for the plans. (¶ 55.)

As part of Anthem's benefit plans, members may be entitled to prescription drug coverage. Plan members with prescription drug coverage may be reimbursed for medications if certain conditions are met, including that the drug is available on Anthem's drug list. (¶ 47.) Subsys, an opioid manufactured, marketed, and sold by Insys, is not on Anthem's drug list. (¶¶ 1, 47.) Anthem's plan members, however, still may be reimbursed for Insys prescriptions if: (1) the prescription meets the Food and Drug Administration ("FDA") approved indication (commonly referred to as "on-label use") and (2) the prescriber or patient obtain a prior authorization from Anthem. (¶¶ 49-51.) To obtain prior authorization, Anthem requires the prescriber to confirm that the patient has a diagnosis of cancer with breakthrough pain and that the patient is already receiving opioids and is tolerant to opioid therapy, which is the only approved FDA use. (¶¶ 39, 52.)

Subsys' profitability is constrained by the limited number of patients with a qualifying diagnosis for on-label use. (¶ 3.) If, however, Insys were able to successfully have Subsys prescribed for off-label uses it could expand the eligible patient population and increase its profitability. Off-label refers to use of an FDA approved drug for any purpose, or in any manner, other than what is described in the drug's labeling. (¶¶ 3, 36.) Anthem, like many insurers, will not reimburse for off-label use of Subsys. (¶¶ 2, 4.)

Faced with the limited on-label patient population and insurers unwilling to reimburse for off-label use, Insys developed a scheme to unlawfully obtain reimbursements from insurers, including Anthem, for off-label prescriptions of Subsys.

**A. Efforts to Induce Prescribers to Write Off-Label Prescriptions**

A major part of Insys' scheme was to convince prescribers to write off-label prescriptions for Subsys.[4] Insys paid illegal kickbacks to prescribers identified as high-

---

[4] Anthem also provides extensive factual allegations on the efforts undertaken by Insys to increase prescriptions for off-label use of Subsys. (¶¶ 70-96.) For example, Insys pushed for prescriptions with initial doses greater than those approved by the FDA and sought to convert patients using other fentanyl products to Subsys with a one-to-one conversion. (*Id.*)

- 2 -

volume high-dose prescribers. (¶¶ 67, 112-18.) Insys ranked its targeted prescribers without screening for eligible patient populations. (¶¶ 65-66.) Several Subsys' prescribers have been criminally convicted of accepting kickbacks, at least two of which prescribed Subsys to Anthem members that did not have an underlying cancer diagnosis. (¶¶ 112-18, 130.)

Aside from kickbacks, Insys also offered free administrative services to prescribers. Specifically, Insys' reimbursement unit handled the prior authorization process on behalf of prescribers. (¶ 131.) Aware that Anthem, like many other insurers, prohibits anyone other than plan members, member representatives, or the prescriber to request prior authorization, employees in Insys' reimbursement unit took efforts to conceal or misrepresent their identity when seeking prior authorization for Subsys. (¶¶ 133-34.) For instance, in an attempt to mislead insurers about the nature of their employment, Insys' employees would call from blocked phone numbers and represent that they were calling from the prescriber's office. (¶¶ 135-36.) Moreover, by offering to handle the prior authorization process for prescribers Insys controlled the fraudulent representations made to insurers, including Anthem. (¶¶ 131-32.)

**B. Efforts to Induce Insurers to Reimburse for Off-Label Prescriptions**

As part of its scheme, Insys drafted and disseminated letters of medical necessity to prescribers. (¶ 99.) Ordinarily, these letters are provided to aid insurers in their coverage decision for benefit claims. (¶ 99.) Insys adapted its template letters to maximize the likelihood of garnering prior authorization. (¶ 99.) For instance, Insys' self-proclaimed "strong" letter included representations about the provider's experience with Subsys, the patient's need for Subsys, and the provider's expectation that the patient's medical necessity for Subsys would "continue for a long-long period." (¶¶ 101-02.)

To further alleviate the burden of the prior authorization process on prescribers and elicit coverage for off-label Subsys prescriptions, Insys provided free administrative services like handling prior authorization requests for prescribers. Because Insys understood that insurers would not approve prior authorizations for off-label uses of

Subsys, Insys employees would represent to the insurer that the patient had a cancer diagnosis and was tolerant to opioids even when that was not the case. (¶¶ 142, 146.) Insys employees were directed to falsely confirm lists of tried and failed medications that would help qualify the patient for prior-authorization to try Subsys. (¶ 147.)

In an effort to mislead insurers, Insys also provided employees with scripts and training on how to answer prior-authorization questions. One such script, which Insys called "the spiel," read: "The physician is aware that the medication is intended for the management of breakthrough pain in cancer patients. The physician is treating the patient for their pain (or breakthrough pain, whichever is applicable)." (¶¶ 143-45.) Strategically and deliberately omitted from the script was the phrase cancer diagnosis. (*Id.*) Elizabeth Gurrieri, the Insys employee who managed the reimbursement unit and later pleaded guilty to federal crimes for her role in Insys' illegal scheme, admitted that she "specifically directed employees to lie using a number of different methods to mislead insurers . . . [and] that multiple employees as well as Ms. Gurrieri actually lied to insurers . . . in order to gain prior authorization."[5] (¶ 148.)

### C. Efforts to Eliminate Co-Payment Obligations

The co-payment obligations of Anthem's plan members presented a final hurdle. Anthem, like most insurers, contractually requires that plan members pay for a portion of the medical services or prescriptions consumed by that member. This obligation, which is commonly referred to as a co-payment or co-pay, is ordinarily a percentage of the total cost for the medical service or prescription consumed by the member. (¶¶ 155-56.) That means that the more expensive the treatment or prescription, the higher the co-payment obligation. This requirement creates an incentive for members to be sensitive to the cost of their healthcare and to act prudently in choosing services and prescriptions. (¶¶ 157-58.)

Subsys is extremely expensive, especially as dosage strengths are increased. (¶ 46.) Aware that co-pay obligations limit the willingness of patients to use Subsys rather than

---

[5] Anthem alleges facts concerning other efforts Insys took to induce insurers to reimburse for off-label prescriptions, including the use of misleading opt-in forms. (¶¶ 137-40.)

- 4 -

more affordable opioids, Insys habitually eliminated patient co-pay obligations for the drug. (¶ 154.) One way in which Insys eliminated co-pay obligations was to issue a super voucher to the pharmacy, in which Insys paid the co-pay obligation on behalf of the patient. (¶¶ 91-98, 159-60.) With their co-pay obligations eliminated, Anthem's members disregarded their contractual incentive to seek a less expensive alternative and filled Subsys prescriptions they otherwise would not have filled. (¶¶ 154, 161-63.) In doing so, Anthem was forced to reimburse for Subsys prescriptions it otherwise would not have paid for had the members incurred the co-payments. (¶¶ 154, 161-63.)

**D. Harm Caused by Insys' Scheme**

Anthem conducted a retrospective review of all claims for reimbursement for Subsys prescriptions and determined that 54% of members with Subsys prescriptions that had been reimbursed by Anthem did not actually have an underlying cancer diagnosis. (¶ 196.) This equates to over $19 million in reimbursements Anthem made for Subsys prescriptions that were not covered by Anthem's plans. (¶ 198.)

**II. Discussion**

Anthem filed an amended complaint in the instant action on July 23, 2018, asserting multiple claims against Insys, including: statutory claims for deceptive, unfair, and unlawful business practices (Count I), and common law claims for fraud (Count II), negligent misrepresentation (Count III), unjust enrichment (Count IV), civil conspiracy (Count V), and tortious interference with a contract (Count VI). (Doc. 84.)

Insys now moves to dismiss all of Anthem's claims. First, Insys contends that Anthem's claims should be dismissed because they are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Federal Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq*. Next, Insys argues that Anthem lacks Article III standing to bring its claims. Finally, Insys argues that Anthem fails to state a claim for which relief can be granted under Rule 12(b)(6).

**A. Preemption**

**1. ERISA**

There are two strands to ERISA's powerful preemptive force. First, ERISA section 514(a) expressly preempts all state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. 29 U.S.C. § 1132(a). A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a). *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). Insys contends that both strands apply to Anthem's claims.

### a. Section 514(a)

Section 514(a) provides that, subject to various exceptions not applicable here, ERISA "supersede[s] any and all State laws insofar as they may . . . relate to any employee benefit plan." § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). A state law demonstrates the forbidden "reference to" an ERISA plan when it "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." *Cal. Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 325 (1997). On the other hand, in determining whether a state law has a "connection with" an ERISA plan the Ninth Circuit applies a "relationship test" under which "a state law claim is preempted when the claim bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th 2009). Insys argues that Anthem's claims have a "connection with" and "reference to" ERISA. The Court disagrees.

Common law fraud does not refer to ERISA plans, as it is a law of general applicability that neither "acts immediately and exclusively upon ERISA plans," nor relies upon the existence of ERISA plans to operate. *See, e.g., Paulsen*, 559 F.3d at 1082. Notwithstanding Anthem's obligation to prove that Insys made misrepresentations and

received payments for non-covered benefits, the Court will not have to "interpret the plan in any manner that would substantially effect the rights and obligations established by the employee benefit plan in this case." *See, e.g.*, *Spindex v. Physical Therapy, U.S.A., Inc. v. Arizona*, No. 04-CV-1576-PHX-JAT, 2005 WL 3821387, at *8 (D. Ariz. Nov. 9, 2005)

The same is true for Anthem's claims for negligent misrepresentation, unjust enrichment, civil conspiracy, tortious interference with contract, and statutory claims for unfair and deceptive competition and practices. This conclusion is supported by the overwhelming weight of authority. Courts addressing arguments that ERISA preempts similar state law claims under factually analogous circumstances have found the claims not preempted. *See, e.g.*, *Spindex*, 2005 WL 3821387, at *8; *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Grp., Inc.*, 121 F. Supp. 3d 950, 962-71 (C.D. Cal. 2015); *Scripps Health v. Schaller Anderson, LLC*, No. 12-CV-252-AJB(DHB), 2012 WL 2390760, at *2-*6 (S.D. Cal. Jun. 22, 2012); *Ass'n of N.J. Chiropractors v. Aetna, Inc.*, No. CIV.A. 09-3761 JAP, 2012 WL 1638166, at *5-7 (D.N.J. May 8, 2012); *United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*, 5 F. Supp. 3d 1350, 1363 (S.D. Fla. 2014).

With respect to the relationship test, Anthem's allegations do not appear to directly implicate an ERISA-regulated relationship. The complaint alleges that Insys, a drug manufacturer and non-ERISA entity, defrauded Anthem by knowingly submitting frivolous claims for reimbursement. Anthem's complaint does not allege claims which ordinarily implicate an ERISA relationship—i.e., charging an ERISA entity with an alleged improper administration of an ERISA plan, mishandling of plan benefits, or failure to pay covered benefits. Accordingly, Anthem's state law claims do not have the requisite nexus with an ERISA plan or benefit system. *See, e.g.*, *Spindex*, 2005 WL 382187, at *7; *Almont Ambulatory Surgery Center*, 121 F. Supp. 3d at 965. Anthem's claims are not preempted under the reference to or connection with prong of section 514(a).

### b. Section 502(a)

Courts apply a two-part test to determine whether a state law cause of action is

completely preempted under section 502(a). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-210 (2004). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 208-09. A state-law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under section 502(a), and (2) where there is no other independent legal duty that is implicated by a defendant's actions. *See Marin Gen. Hosp. v. Modesto & Empire & Traction Co.*, 581 F.3d 941, 946 (9th Cir. 2009) (internal quotation and citation omitted.) A state law cause of action is preempted by section 502(a) only if both prongs of the test are satisfied.[6] *Id.* at 947.

Taking the second prong first, Insys argues that "[t]he viability of each of Anthem's six counts is predicated on legal duties arising out of the plans, *i.e.*, whether the Subsys prescriptions were covered services and thus, should have been paid under the specific terms of the . . . ERISA plans." (Doc. 97 at 22.) Insys further contends that Anthem's state law claims are "premised solely on duties under ERISA . . . ." (*Id.*) The Court disagrees.

Anthem's claims rely on allegations that Insys engaged in an unlawful scheme to submit fraudulent claims for reimbursement to Anthem. Anthem's claims are based on duties which derive from state common and statutory law—namely to refrain from making misrepresentations in the presentation of claims for benefits. *See Almont Ambulatory Surgery Ctr.*, 121 F. Supp. 3d at 965 (noting that although "the question of what payments would have been justified may require consultation of the plans themselves, it cannot be said that the fraud claim is based on no duties independent of ERISA or plan terms"); *United Healthcare Servs.*, 5 F. Supp. 3d at 1361; *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 578 (D. N.J. 2009). "The obligation to

---

[6] Although ultimately inapplicable because of the Court's finding that section 502(a) does not preempt Anthem's claims,"[i]f a complaint alleges only state-law claims, and if these claims are entirely encompassed by § 502(a), that complaint is converted from 'an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Marin General*, 581 F.3d at 945 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)).

meet that duty is not dependent on the terms of any ERISA plan, and arises independently from any contractual duties imposed by ERISA."[7] *United Healthcare Servs.*, 5 F. Supp. 3d at 1361. Accordingly, because both prongs must be satisfied before a claim is completely preempted and Insys has failed to satisfy the second prong, Insys' motion to dismiss Anthem's claims under section 502(a) is denied.

### 2. FDCA

Alternatively, Insys asserts that Anthem's claims are preempted by the FDCA because they attempt to enforce FDA requirements using state law claims. (Doc. 97 at 24-26.) Insys relies on a theory of implied preemption articulated by the Supreme Court in *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348 (2001). In *Buckman*, the Supreme Court held that "state-law fraud-on-the FDA claims," based solely on allegations of harm resulting from misrepresentations made to the FDA, "conflict with, and therefore are impliedly pre-empted by federal law." *Id.* The Supreme Court reasoned that the statutory and regulatory framework by which the FDA regulates the marketing and distribution of medical devices, including the Agency's responsibility to police fraud, aim to achieve a "delicate balance of statutory objectives," which can be skewed by attempts to enforce FDA requirements through state common law. *Id.*

Insys contends that the same rationale applies here because Anthem "improperly attempts to usurp the FDA's exclusive role to enforce the FDCA by asserting claims based on Insys'[] alleged off-label marketing of Subsys for uses not approved by the FDA." (Doc. 97 at 12.) The Court disagrees.

Anthem's claims are not based on Insys' alleged off-label marketing. Instead, Anthem's claims are based on misrepresentations made by Insys directly to Anthem to induce Anthem to pay for off-label prescriptions that it otherwise would not have

---

[7] In reply, Insys cites *Health Care Ser. Corp. v. TAP Pharm. Prods., Inc.,* 274 F. Supp. 2d 807 (E.D. Tex. Aug. 1, 2003), in support of the opposite proposition. This case is neither controlling on the Court, nor part of the overwhelming majority on this issue. *See, e.g.*, *Almont Ambulatory Surgery Ctr.*, 121 F. Supp. 3d at 968-69; *Scripps Health*, 2012 WL 2390760, at *5-*6; *United Healthcare Servs.*, 5 F. Supp. 3d at 1361; *E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d at 577-78. As such, the Court declines to follow *Health Care*.

reimbursed. (*See, e.g.*, Doc. 84 ¶¶ 7-8, 132-39, 142-43.) Stated differently, Anthem's claims are based on Insy' state law duties to refrain from making material misrepresentations, which exist independently of FDA regulations. "Moreover, to the extent the Complaint alleges off-label promotion efforts by [Insys], these allegations are asserted as overt acts in an alleged conspiracy to defraud [Anthem], not as independently actionable bases for [Anthem's] claims." *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 555 (E.D. Pa. 2018). Accordingly, Anthem's common law claims are not preempted under *Buckman*.

Insys also moves the Court to dismiss Anthem's claims because the FDCA creates no private right of action against off-label promotion. (Doc. 97 at 24.) Because Anthem's claims are based on breaches of duties created under state law, however, the absence of a private right of action under the FDCA has no bearing on these claims. *See, e.g.*, *Aetna Inc.*, 324 F. Supp. 3d at 555.

### B. Article III Standing

Insys argues that Anthem lacks Article III standing to bring state law claims as to fully insured or self-funded plans because it has suffered no injury-in-fact in connection with these claims. (Doc. 97 at 26.) A plaintiff must have Article III standing in order for the suit to constitute a "case or controversy" over which a federal court has subject matter jurisdiction.[8] *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). In order to demonstrate Article III standing, a plaintiff must show: "(1) injury in fact; (2) causation; and (3) likelihood that a favorable decision will redress the injury." *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006). An injury-in-fact consists of "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). "At the pleading stage, [however], general factual allegations

---

[8] Because standing relates to a federal court's subject matter jurisdiction under Article III, it is properly raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(1), not Rule 12(b)(6). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561; *see Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012).

Insys argues that "Anthem summarily alleges that it is 'seeking recovery for payments made by Anthem's fully-insured plans.'" (Doc. 129 at 9 (citing Doc. 84 ¶ 60).) The Court disagrees. Anthem alleges Insys' misrepresentations induced Anthem to pay claims for Subsys prescriptions that were not reimbursable, and that no such payments would have been made absent that conduct. (*See, e.g.*, Doc. 84 ¶¶ 201-02, 206, 209, 214, 222, 230, 248.) Anthem directly suffered an injury when those payments were made. *See, e.g.*, *Arpahoe Surgery Ctr. v. Cigna Healthcare, Inc.*, No. 13-CV-3422-WJM-CBS, 2015 WL 1041515, at *3 (D. Colo. Mar. 6, 2015). At this stage of the litigation, this general factual allegation is all that Anthem must plead to survive a standing challenge. *See Aetna Life Ins. Co. v. Huntington Valley Surgery Ctr.*, No. 13-CV-3101-WY, 2014 WL 4116963, at *4 (E.D. Pa. Aug. 20, 2014).

As for the self-funded plans, Insys argues that Anthem lacks standing because it neither suffered a financial injury nor has a valid assignment to bring the state law claims on behalf of the plans. (Doc. 129 at 6.) In support, Insys notes that, while Anthem provides administrative services for self-funded plans, it neither funds nor pays claims for these plans. (*Id.*) Although reimbursements on behalf of self-funded plans might not have been made from Anthem's fisc, Anthem still "has a concrete and particularized interest in paying only valid claims to ensure its members' financial interests are protected." *Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, No. DKC 14-2376, 2015 WL 4394408, at *17 (D. Md. July 15, 2015) (citing *Gerosa v. Savasta & Co.*, 329 F.3d 317, 320 (2d Cir. 2003)). Accordingly, the Court finds that Anthem has Article III standing to bring its claims.

**C. Failure to State a Claim for Relief Under Rule 12(b)(6)**

When analyzing a complaint for failure to state a claim for relief under Federal Rule

of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid dismissal, the complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Moreover, Anthem's allegations of fraud are subjected to a heightened pleading standard under Rule 9(b), which requires that "a party [alleging fraud] must state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted). "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.* at 1107. As such, dismissals under Rule 9(b) and 12(b)(6) "are treated in the same manner." *Id.* at 1107-08.

Insys argues that Anthem's state-law claims should be dismissed under Rule 12(b)(6) for failure to state a claim. Insys' argument is three-fold. First, Insys contends that Counts II through VI should be dismissed in their entirety because Anthem failed to plead the applicable state law with respect to each count.[9] To be clear, Insys is not arguing

---

[9] In support, Insys cites to non-binding district court cases. The Court declines to adopt the reasoning of those cases here. The origins of Insys' proposition appear dubious at best. *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (citing no authority in support); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 (N.D. Cal. 2007) (citing no authority in support). Nor is it clear that this proposition applies to any claims other than unjust enrichment, or outside the context of antitrust and class action litigation. *See e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011); *SRAM*, 580 F. Supp. 2d at 910; *In re Ditropan XL*, 529 F. Supp. 2d at 1101.

that a specific state law applies and that, under that law, Anthem's claims fail. Instead, Insys argues that Anthem's claims are irreparably defective and must be dismissed because Anthem did not affirmatively plead that a particular state's law applies. Neither the language of Rule 12(b)(6) nor *Twambly* and *Iqbal* impose such an obligation, however. The Court therefore declines to do so.

Next, Insys contends that Count I should be dismissed because the applicable state statutes exempt insurance contracts like the ERISA-governed plans at issue in this action.[10] (Doc. 97 at 37.) Anthem's claims, which at their core concern Insys' scheme to defraud Anthem through material misrepresentations, are not prohibited under these state statutes, which only exempt claims concerning the sale of insurance contracts or insurance trade practices. *See* Ind. Code Ann § 24-5-0.5-2(a)(1); Nev. Stat. Ann. § 686A.015(1); N.H. Rev. Stat. Ann. § 358-A:3(I); Va. Code Ann. § 59.1-199(D).

Finally, Insys argues that Anthem fails to allege a viable theory of causation. (Doc. 97 at 30-37.) Insys puts forth separate arguments for Counts I through V and Count VI. The thrust of Insys' argument with respect to Counts I through V is that, when prescribing Subsys, providers were exercising their independent medical judgment, which breaks the causal chain between Insys' actions and Anthem's alleged injury. (Doc. 129 at 15.) As pled, however, the complaint alleges that prescribers were not exercising independent medical judgment. That is, prescribers were prescribing Subsys in exchange for kickbacks. (Doc. 84 ¶¶ 112-31.) Notwithstanding whether prescribers were exercising independent medical judgment, Anthem also alleges that Insys made or assisted in making prior authorization requests in which it was represented that "the patient had a cancer diagnosis and was tolerant to opioids even when that was not the case." (¶ 132.) Aware that Anthem and other insurers "would not authorize payment for non-indicated uses of Subsys," Insys allegedly made these representations with the intent induce reimbursement that otherwise would not have been made. (¶¶ 132, 137-40, 142.) These allegations sufficiently support causation.

---

[10] Insys seeks dismissal of the entire claim, yet makes no challenge to Anthem's claims under the state statutes of California, Colorado, or Connecticut.

As to Count VI, Anthem's tortious interference with contract claim attempts to impose liability based on Insys' super voucher program, which "intentionally interfer[ed] with Anthem's contracts with its members," and caused "Anthem members to fill prescriptions that they otherwise would not have filled." (Doc. 84 ¶¶ 162, 244.) Both parties rely on Arizona law for the elements of a tortious interference claim. The Court will do the same. In Arizona, to recover for the tort of intentional interference with contractual relations, a plaintiff must prove five elements: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 31 (Ariz. 2002).

Insys contends that "Anthem did not allege any contractual provision prohibited its members from accepting co-pay assistance to satisfy their co-pay obligation, let alone that Insys induced or caused a breach of this provisions of the members' contracts." (Doc. 129 at 16.) The Court agrees. At most, Anthem alleges that Insys interfered with a "contractual incentive." (Doc. 84 ¶¶ 244-45.) Anthem cites no authority that inducing a party to forego a contractual incentive constitutes a breach. Therefore, the Court grants Insys' motion to dismiss Anthem's tortious interference with a contract claim.

**IT IS ORDERED** that Insys' motion to dismiss (Doc. 97) is **GRANTED** with respect to Count VI (tortious interference with a contract) and **DENIED** with respect to Counts I through V.

Dated this 14th day of May, 2019.

Douglas L. Rayes
United States District Judge